**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | |
|---|---|
| CASSANDRA O'BRYANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 7:17-cv-00060-JHE |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Cassandra O'Bryant ("O'Bryant") seeks review, pursuant to 42 U.S.C. § 405(g),

§ 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying her application for a period of disability and disability

insurance benefits ("DIB"). (Doc. 1). O'Bryant timely pursued and exhausted her administrative

remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The

undersigned has carefully considered the record and, for the reasons stated below, the

Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

O'Bryant filed her application for a period of disability and DIB on December 10, 2013,

alleging she became unable to work beginning on August 1, 2010. (Tr. 116-17). The Agency

initially denied O'Bryant's application, and O'Bryant requested a hearing where she appeared on

July 24, 2015. (Tr. 29-50). After the hearing, the Administrative Law Judge ("ALJ") denied

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 16).

O'Bryant's claim on August 27, 2015. (Tr. 16-28). O'Bryant sought review by the Appeals Council, but it declined her request on November 14, 2016. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On January 13, 2017, O'Bryant initiated this action. (*See* doc. 1).

O'Bryant was a fifty-seven-year-old female at the time of the ALJ's decision. (Tr. 116). O'Bryant has a high school education and past relevant work as a lunchroom worker and safety inspector. (Tr. 48, 142).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)    whether the claimant can perform his or her past work; and
(5)    whether the claimant is capable of performing any work in the national

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found O'Bryant last met the insured status requirements of the Social Security Act on March 31, 2015 (her date last insured or "DLI"), and that O'Bryant had not engage in substantial gainful activity from her alleged onset date of August 1, 2010, through March 31, 2015, her DLI. (Tr. 21). At Step Two, the ALJ found O'Bryant has the following severe impairments: cystocele, status post transvaginal mesh, osteopenia. (*Id.*). At Step Three, the ALJ found O'Bryant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Before proceeding to Step Four, the ALJ determined O'Bryant's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through her DLI, O'Bryant had the RFC to perform a

limited range of light work as defined in 20 C.F.R. 404.1567(b). Specifically, the ALJ found that O'Bryant could perform "light work" except she could lift and carry twenty pounds occasionally and ten pounds frequently, no limitation in standing, sitting, or walking; she could frequently balance, and occasionally stoop kneel, crouch, or crawl; she could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she had no manipulative, environmental, or communicative limitations. (Tr. 22-24).

At Step Four, the ALJ determined, through the date last insured, O'Bryant was capable of performing past relevant work as a safety inspector as generally performed in the national economy because it did not require the performance of work-related activities precluded by the O'Bryant's RFC. (Tr. 24). Accordingly, the ALJ concluded O'Bryant was not under a disability during the relevant period. (*Id.*). The ALJ did not reach Step Five of the sequential evaluation process.

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination O'Bryant failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. O'Bryant challenges the Commissioner's decision on two specific grounds, contending: (1) the ALJ failed to pose a hypothetical question to the Vocational Expert ("VE") that comprehensively

described O'Bryant's limitations and restrictions (doc. 9 at 7-9); and (2) the ALJ's RFC assessment is not supported by substantial evidence, (*id.* at 9-14).  Neither of these grounds supports reversal.

### A.  Vocational Expert Testimony is Not Required at Step Four

O'Bryant contends the ALJ erred when he did not pose a hypothetical question to the vocational expert ("VE").  At Step Four of the Sequential Evaluation Process, the ALJ determined that, through the date last insured, O'Bryant was capable of performing her past relevant work as a safety inspector as generally performed in the national economy because it did not require the performance of work-related activities precluded by the O'Bryant's RFC.  (Tr. 24).  Accordingly, the ALJ concluded O'Bryant was not under a disability during the relevant period.  (*Id.*).  Because of this finding, the ALJ did not reach Step Five of the sequential evaluation process.  (*See id.*).

At Step Five, the ALJ determines whether a significant number of jobs exist in the national economy that a claimant can perform.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v).  An ALJ may make this determination by either applying the Medical Vocational Guidelines or by obtaining testimony of a VE.  *Phillips*, 357 F.3d at 1239-40.  For a VE's testimony to constitute substantial evidence on the issue of whether a significant number of jobs exist in the national economy that someone with the claimant's limitations could perform, the ALJ must pose a hypothetical question that comprises all of the complaints impairments.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

When evaluating O'Bryant's claim, the ALJ did not reach Step Five.  Instead, at Step Four of the sequential evaluation process, the ALJ found O'Bryant could perform her past relevant work as generally performed in the national economy.  (Tr. 24).  *See* 20 C.F.R. § 404.1520.  As the Eleventh Circuit has explained, an ALJ is **not** required to consult a VE in determining whether a claimant can perform her past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir.

1990). Therefore, any failure to present a hypothetical to the VE was not an error.

Moreover, the ALJ did ask the VE to evaluate O'Bryant's past relevant work, and the VE reported O'Bryant's past work as a safety inspector was a light, skilled position as listed in the Dictionary of Occupational Titles ("DOT") # 168.167-062. (Tr. 48). The DOT provides substantial evidence to support the ALJ's finding that O'Bryant's past relevant work as generally performed did not exceed her RFC. (Tr. 23). *See* 20 C.F.R. § 404.1560(b)(2). Accordingly, substantial evidence supports the ALJ's conclusion O'Bryant could perform her past relevant work and was therefore not disabled.

**B. The ALJ's Residual Functional Capacity Determination**

O'Bryant next challenges the ALJ's RFC determination, contending the ALJ substituted his opinion for those of her treating and examining sources. (Doc. 9 at 9-14). This contention is not supported by the record.

Before proceeding to Step Four of the Sequential Evaluation Process, the ALJ evaluated the relevant evidence in the record and determined O'Bryant's RFC, which is the most she can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). At the hearing level, the responsibility of assessing a claimant's RFC falls on the ALJ. *See* 20 C.F.R. §§ 404.1546, 416.946. The ALJ is not required to (and generally does not) adopt the opinion of any one medical source, but considers the totality of the evidence in arriving at a conclusion on the ultimate question of disability. *See* 20 C.F.R. § 404.1527.

**1. It is the ALJ's Responsibility to Determine a Claimant's RFC Based on the Relevant Evidence, Which Includes But is Not Limited to Medical Opinions.**

To the extent O'Bryant argues the ALJ's RFC assessment is not supported by substantial

evidence because it does not reflect the findings of an examining doctor (doc. 9 at 13),[4] her argument is without merit. The responsibility for assessing a claimant's RFC belongs to the ALJ; it is not a medical assessment. *See* 20 C.F.R. § 404.1546(c). The ALJ's assessment of a claimant's RFC is "based on all the relevant evidence in [the claimant's] case record," and not simply on a doctor's opinion. 20 C.F.R. § 404.1545(a)(1). Thus, although a doctor may express an opinion regarding what a claimant can still do, such an opinion is different from an ALJ's assessment of a claimant's RFC and is not determinative. *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b), (c), 404.1527, 404.1545, 404.1546(c). The ALJ's RFC determination must be based on substantial evidence, it does **not** require a matching medical opinion. *Green v. Comm'r of Soc. Sec*., 223 F. App'x 915, 923 (11th Cir. May 2, 2007).

Moreover, the ALJ did not, as O'Bryant alleges, (*see* doc. 9 at 13), substitute his own opinion for those of the medical sources of record. The ALJ simply carried out his responsibility to consider the medical and other evidence of record in assessing O'Bryant RFC. *See* 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545. Furthermore, an opinion stating that a claimant is disabled or assessing the claimant's RFC is not a medical opinion, as such issues are reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986).

### 2. The ALJ Lifting Requirement is Supported by Substantial Evidence

O'Bryant also challenges the ALJ's finding regarding her lifting requirements and argues

---

[4] O'Bryant argues as follows: "Essentially, in reaching his RFC conclusion, the ALJ rejected every medical opinion of record and substituted his judgment for that of the experts." (Doc. 9 at 13).

she is limited to sedentary work[5] rather than light work,[6] based on her treating urologist's, Dr. Wilson, report from January 2010. (Doc. 9 at 11; *see* tr. 217-18).

O'Bryant fails to show the ALJ erred when he found she did not have a ten-pound lifting restriction and therefore could perform light work (as opposed to being limited to sedentary work, which includes a ten-pound lifting restriction). The ALJ expressly recognized that following surgery in January 2010, Dr. Wilson reported O'Bryant could return to work but could not lift over ten pounds. (Tr. 23, 217-18). The ALJ also noted O'Bryant improved following the surgery. (Tr. 23). Treatment notes from O'Bryant's primary care physician, Dr. Grubbs, do not include a ten-pound lifting limitation, and only indicate O'Bryant must avoid heavy lifting. (Tr. 23, 244, 246, 249, 251, 274, 276, 278, 280). Specifically, O'Bryant refers to Dr. Grubb's notes stating: "[s]he is not able to do work which requires lifting/stooping/straining per her urologist. (Doc. 9 at 12)

---

[5] Sedentary work is defined as

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

[6] Light work is defined as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

(Tr. 295). However, the ALJ reviewed the urology record and found those records show that the urologist gave no other limitations other than "no heavy lifting" (and the one-time ten-pound limitation). (Tr. 23, 217-224). Additionally, O'Bryant's self-reporting contradicts the claim that she is limited to sedentary work. In January 2014, O'Bryant reported to the consulting examiner, Dr. Robertson, that Dr. Wilson had given her "about a 30-pound weight restriction." (Tr. 291, 294). Such a weight restriction is consistent with light work, not sedentary work.

Finally, according to the July 2015 Medical Source Statement form Dr. Grubbs completed, O'Bryant can work, but cannot do work requiring lifting per her urologist. (Tr. 295). He then clarified that she risks incontinence of her bladder if she does any heavy lifting. (Tr. 296). Dr. Grubb's report, therefore, supports the ALJ's RFC finding, which restricts O'Bryant from "heavy lifting." O'Bryant has failed to demonstrate the ALJ erred in assessing her RFC.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying O'Bryant's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 28th day of March, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE